## PULLING *vs.* THE PEOPLE.

By the method of computing time in this state, established by the revised statutes,
a day consists of twenty-four hours, and commences and ends at midnight.
Whenever, therefore, a statute forbids an act to be done on a particular day, it has
reference to this mode of computation by the calendar; unless there is some
express declaration to the contrary.
Accordingly, where a cause pending before a court of special sessions was sub-
mitted to the jury at two o'clock in the morning of *Sunday*, and the jury ren-
dered their verdict about three o'clock; *Held* that the conviction was errone-
ous, and it was reversed.
Upon a certiorari to a court of special sessions the supreme court, it *seems*, is
restricted from reversing the conviction on the ground that the verdict is against
the weight of evidence.    But it may examine any other errors in the proceed-
ings and judgment, which appear on the face of the return.

CERTIORARI to a court of special sessions held by William
Easterley, Esq. a justice of the peace of Saratoga county, to re-
move a conviction for petit larceny.    The facts are set forth in
the opinion of the court.

*Wm. T. Odell* for the plaintiff in error.

*J. Lawrence,* (district attorney,) for the people.

Pulling *v.* The People.

*By the Court,* WILLARD, J.   The defendant was tried before
a court of special sessions in December, 1848, held before a jus-
tice and a jury, for the crime of petit larceny.   The trial was
commenced on the 30th of December, and the cause was sub-
mitted to the jury at two o'clock in the morning of Sunday the
31st of December.   The jury rendered their verdict about three
o'clock in the morning, finding the defendant guilty.   The
justice took a recess until Monday morning and then pronounced
judgment on the verdict.   The error complained of is, that the
court was held open on Sunday.   The statute is in these words,
(2 *R. S.* 275, § 7.)   "No court shall be opened, or transact any
business, on Sunday, unless it be for the purpose of receiving a
verdict or discharging a jury ; and every adjournment of a court
on Saturday, to another day, shall always be to some other day
than Sunday, except such adjournment as may be made after
a cause has been committed to a jury.   But this section shall
not prevent the exercise of the jurisdiction of any single magis-
trate, when it shall be necessary in criminal cases, to preserve
the peace, or to arrest offenders."   The question is what period
of time is meant in the foregoing section by the term Sunday.
Coke says, that at common law the day is divided into the *nat-
ural* and the *artificial* day ; the natural, consisting of twenty-
four hours, and the artificial of the space intervening between
the rising and setting of the sun.   Different nations begin the
day at different times.   The Jews, Chaldeans and Babylonians
begin the day at the rising of the sun ; the Athenians at the
fall; the Umbri of Italy at midday ; the Egyptians and Ro-
mans from midnight.   (*Co. Litt.* 135, *a, b.*)   The law of Eng-
land in many cases, follows the Roman in this respect; and for
certain purposes also, it regards only the solar or artificial day.
(*Ib.*)   The same is true likewise of the laws of this state.   By
the common law all judicial proceedings are prohibited on Sun-
day.   (8 *Cowen,* 30, *per Savage, Ch. J.   Johnson* v. *Day,* 17
*Pick.* 109, *per  Wilde, J.*)   The trial of a cause is a judicial
act.   No part of it can be had on Sunday, except what is spe-
cifically allowed by the statute, namely, the receiving of the
verdict.

VOL. VIII.                    49

Pulling *v.* The People.

It is insisted by the public prosecutor, that the statute has regard only to the solar, or artificial day. This question must be settled by reference to our own statutes, and the usage of our own courts, as our sister states have adopted different regulations on this subject. The 19th chapter of part one of the revised statutes, title 1, " of the computation of time," enacts that time shall continue to be computed in this state, according to the Gregorian, or new style, and the first day of January shall be reckoned the first day of the year. It enacts that whenever the term year is or shall be used in any statute, deed, contract, &c. it shall be intended to consist of three hundred and sixty-five days, the added day of leap year and the day preceding to be reckoned together as one day, and the term month shall be construed to mean a calendar month and not a lunar month. According to this division of time, a day consists of twenty-four hours, and commences and ends at midnight. Whenever, therefore, a statute forbids an act to be done on a particular day, it has reference to this mode of computation, by the calendar, unless there is some express declaration to the contrary. The act for suppressing immorality, of 23d Feb. 1788, (2 *Greenl.* 89, 90, § 3,) forbade the service on Sunday of any writ, process, warrant, order, judgment or decree, (except in case of treason, felony and breach of the peace,) and declared such service to be void. This section was continued in the revised acts of 1813. (2 *R. L.* 103, 105.) Under this latter statute it was held, in *Butler* v. *Kelsey*, (15 *John.* 177,) that an inquisition taken before a sheriff when the cause was submitted to the jury about one o'clock in the morning of Sunday, and the verdict found about four, was void, and they accordingly set it aside. The court said it was executed on Sunday, within the meaning of the statute. They distinguished the case from that of *Houghtaling* v. *Osborn*, (15 *John.* 119,) where a verdict was allowed to be taken on Sunday, the cause having been submitted to the jury on Saturday. These cases are cited with approbation by the court in *Story* v. *Elliott*, (8 *Cowen*, 28,) where it was held that an award cannot be made on Sunday. In *Field* v. *Park*, (20 *John.* 140,) the service on Sunday of a notice and affidavits,

Pulling *v.* The People.

as the foundation for a motion, was held irregular as being within the spirit of the act.(a)   In *Taylor* v. *Phillips*, (3 *East*, 155,) a latitat was set aside, as irregular, because served on Sunday. Lord Ellenborough considered such service as forbidden in effect by 29 Ch. 2, ch. 7, § 6, of which our former statute was a transcript.   It does not appear on what hour of the day the service was made either in *Field* v. *Park* or *Taylor* v. *Phillips*.   It is therefore fairly inferrible, that the service would be void if made on any part of the natural day.

The foregoing cases from our own reports were prior to the revised statutes.   It is presumed that if the legislature had intended to restrict the prohibition with regard to judicial proceedings on Sunday, to the artificial day between sunrise and sunset, they would have said so, in revising the law, in terms that could not be mistaken.   As the statute now stands, it clearly relates to the whole natural day.   In *Vanderwerker* v. *The People*, (5 *Wend.* 530,) the question arose under the revised statutes, on a certiorari to a court of special sessions.   The justices held their court open from Saturday till Monday, for the return of a second service, and this was complained of as a violation of the statute.   But the court held, that merely continuing the cause, over Sunday, *was not opening a court to transact business on Sunday*, within the meaning of the act.

The cases referred to from our sister states were all based upon the local law.   Thus in *Fox* v. *Abel*, (2 *Conn. Rep.* 541,) while it was conceded that at common law the natural day extends from midnight to midnight, yet it was decided by a majority of the court, that their statute, prohibiting the service of process on the Lord's day, had reference only to the *solar day*. This opinion was based upon the peculiar phraseology of some of the sections of the act.   So, in Massachusetts, in *Johnson* v. *Day*, (17 *Pick.* 106,) a writ of attachment issued on Sunday after sundown, was held regular, because their statute of 1791, ch. 58, limited the time to which its prohibition extended, to the time included between the midnight preceding and the sunset-

(a) So is the service of a writ on Sunday, by the defendant's indorsing his appearance.  (*Vanderpool* v. *Wright*, 1 *Cowen's Rep.* 209, 210, *note a.*)

ting of the same day. In like manner the statutes of Vermont (*Laws of Vt.* 394, 395) for some purposes consider the sabbath as beginning at sundown on Saturday, and terminating at sundown the next day, and for other purposes as continued till midnight; and it expressly forbids the service of process between Saturday at sundown and twelve o'clock at night on Sunday, except in cases of treason, felony and breach of the peace, and in favor of bail apprehending their principal. (*R. L. of Verm.* 184, § 39.) In New Hampshire, the supreme court held, in *Shaw* v. *Dodge*, (5 *N. Hamp. Rep.* 462,) that a service of civil process upon the Lord's day was, under their statute, illegal, and that the day, within the meaning of that act, included the twenty-four hours, beginning and ending at midnight.

The common law, it is said by *Coke*, (*supra*,) sometimes regards the solar day. Our own statutes sometimes adopt the solar day and sometimes only a part of it. Thus, at common law, a distress for rent service must be made in the *day* time and not in the night. (*Co. Lit.* 142. 3 *Bl. Com.* 10, 11.) And a demand of rent, in order to enforce a forfeiture, must be made a convenient time before *sunset*. (*Id.* 202, *a.*)

In the act respecting elections, (*Laws of* 1842, 109, 118,) the election is to be held but one *day;* and by § 6 of art. 1, the poll is required to be opened in the cities, at sunrise, and in the several towns, at any time between sunrise and nine o'clock in the morning, and to be kept open till the setting of the sun. Hence the *day* for voting is the *artificial day*. By the 4th section of title 1, no civil process is permitted to be served on any elector entitled to vote, in such city or town, on the *day* on which such election shall be held. And by the 5th section, no court shall be opened or transact any business in any city or town on the day such election shall be held therein, unless it be for the purpose of receiving a verdict, or discharging a jury, or the naturalization of foreigners; and every adjournment of a court in such city or town *on the day next preceding* the day any such election shall be held therein shall always be to *some other day than the day of such election*, except such adjournment as may be made, after a cause has been committed to a jury. These

sections obviously relate to the natural day.  In the act relative to executions upon property, (2 *R. S.* 369, § 36,) the sale of real and personal property by virtue of any execution is required to be between nine o'clock in the forenoon and the setting of the sun.  The code fixes the time for the service of papers in certain cases between the hours of six o'clock in the morning and nine o'clock in the evening.  (*Code*, § 409.)  And there are numerous other statutes, as well as usages, which fix particular hours in the day, within which certain acts must be done.  The fact that such statutes have been adopted, affords evidence that the acts limited to be done on the solar day, might be performed on any portion of the natural day, were it not for legislative interference.

It is urged that the objection can not be taken on this certiorari, because it *is* the common law certiorari and brings up nothing but the record, technically so called.  An intimation to that effect was suggested by Savage, Ch. J. in *The People* v. *Vanderwerker*, (5 *Wend.* 530.)  If this were merely a common law certiorari, it is granted that nothing but the record is before us.  But it is a certiorari expressly authorized by statute, to obtain which the party applying must make an affidavit *" specifying the supposed errors in the proceedings, or judgment complained of."* (2 *R. S.* 717. §§ 42, 43.)  Before allowing the writ, the officer to whom the application is made must be satisfied that some error has been committed in the proceedings or the judgment; but it shall not be allowed on the ground that the verdict of the jury was against evidence.  (*Id.* § 44.)  The writ and original affidavit are required to be served on the magistrates, who are required to make a special return to all the matters specified in the affidavit accompanying the writ.  And by a subsequent section this court is required to hear the parties and give judgment on the return to such writ.  Any error in the *proceedings or judgment*, whether in the record or in receiving or rejecting evidence, or the like, may doubtless be examined by this court.  They are probably restricted from reversing the conviction on the ground that the verdict is against the weight of evidence.  (*Compare* § 44 *to* 49.  *The People* v.

*Vanderwerker, supra.*)   But any other errors in the proceedings and judgment, which appear on the face of the return, can surely be examined by this court.   It would be an idle ceremony to require a return of all the proceedings before the justices, if this court must shut its eyes to every thing but the technical record.

But again, the continuances form a part of the record, and they must show on what day the cause was submitted to the jury.   This court, in *The People* v. *Vanderwerker,* (*supra,*) passed upon an objection like the present, notwithstanding the chief justice intimated that they could not look out of the record.

We entertain no doubt that the conviction was wrong for the error of submitting the cause to the jury on Sunday morning, and that the conviction should be reversed.

Conviction before special sessions reversed.

---

Same Term.   *Before the same Justices.*