## SUPREME COURT.

### FORDYCE RICE agt. CALVIN MEAD.

A *justice of the peace* is not prohibited by statute from lawfully *rendering a judgment, on the day a general election is held,* in a cause that has been tried before and submitted to him on a previous day. (PARKER, J., *dissenting*.)

*Broome General Term, January*, 1862.

*Present,* BALCOM, CAMPBELL and PARKER, *Justices.*

THIS action was tried before a justice of the peace, without a jury, on the 2d day of November, 1860, and submitted to him for decision the same day. But he did not decide it until the 6th day of that month, which was the day, in 1860, on which the general election was held throughout the state for the election of presidential electors, representatives in congress, governor, members of the legislature, and other officers. On that day the justice rendered a judgment against the defendant, in favor of the plaintiff, for $33 damages, besides costs. The Madison county court reversed the judgment for the reason that it was rendered on the day upon which the general election was held in 1860. The plaintiff appealed from the judgment of the county court to this court. The defendant claimed that the justice improperly allowed interest on the plaintiff's account.

D. W. CAMERON, *for plaintiff.*

CHARLES STEBBINS, JR., *for defendant.*

BALCOM, P. Justice.    The first charge in. the plaintiff's account was under the date of April 26, 1840.    The plaintiff testified that all the charges in it were fair and reasonable, and that his custom was to charge interest on his accounts after they had run one year.    He was a physician, and had practiced as such in Cazenovia thirty years.    The account was for services he had rendered, as a physician, for the defendant and his family.    He testified that he understood it was the practice of physicians in Cazenovia, to charge interest after their accounts had run one year; and this evidence was not contradicted.    The defendant was a witness in his own behalf, and did not say he was ignorant of such custom.    If he had no knowledge of it, I think it fair to presume he would have so testified. I am therefore of the opinion the justice had the right to infer that the defendant had knowledge of such custom, and that the allowance of interest on the plaintiff's account was correct.    (*See* 4 *Wend.*, 483 ; 3 *Comst.*, 502.)

The court is bound to take notice of the fact, without proof, that the judgment was rendered on the day the general election was held in November, 1860, (1 *Greenl. Ev.*, § 6.)    The statute gives the court all necessary information as to the days when general elections are held, when it declares that such elections shall be held on the Tuesday succeeding the first Monday of November in every year. (*Laws of* 1842, *p.* 110, § 4.)

The most important question in the case is, whether the judgment was void, because it was rendered the day on which a general election was held.    The statute affecting the question is, that " no court shall be opened, or transact any business, in any city or town, on the day such election shall be held therein, unless it be for the purpose of receiving a verdict or discharging a jury, or the naturalization

of foreigners; and every adjournment of a court in such city or town, on the day next preceding the day any such election shall be held therein, shall always be to some other day than the day of such election, except such adjournment as may be made after a cause has been committed to a jury. But this section shall not prevent the exercise of the jurisdiction of any single magistrate when it shall be necessary in criminal cases to preserve the peace or to arrest offenders." (*Laws of* 1842, *p.* 110, § 5.)

It is true, as stated by the defendant's counsel, the phraseology of this section is substantially the same, except in regard to the naturalization of foreigners, as that which prohibits the opening of courts and their doing business on Sunday, (2 *R. S.*, 275, § 7.) But it should be remembered that the section which forbids such things on that day, is only one of several in regard to such day, which, when considered together, clearly show that the legislature intended to require the observance, almost literally, of the fourth commandment, ( *Exodus, chap.* 20.) And it is indisputable that most christians, except the seventh-day Baptists, have believed, from the time of William the Conqueror, that Sunday should be kept holy, notwithstanding some eminent reformers have contended that the fourth commandment was abrogated by the New Testament. (*See* 31 *Barb.*, 38.) Law makers and judges, in all christian countries, have been, since the year A. D. 517, quite unanimous in the belief that it is sinful to do any judicial act on Sunday, except in cases of necessity. That day was regarded, *dies non juridicus*, before our legislature ever passed any statute making it such. It is clear that a judgment rendered on Sunday is void. (*See* 15 *John.*, 119 ; *id.*, 177 ; 31 *Barb.*, 38 ; *Bouvier's L. Dic., vol.* 1, *p.* 420.) And no one can doubt that the legislature prohibited the doing of such an act on Sunday ; for the presumption is irresistible that they intended that day should not be unnecessarily polluted by courts.

But the legislature could not have had any such intention in prohibiting courts from being opened or transacting any business on days that general elections are held. No member could have believed, or supposed his constituents believed, the performance of such an act on those days was sinful, or the doing of it on such a day an evil example. The only motive the legislature could have had, in enacting the statute under consideration, was to close the courts on general election days so that no elector should be hindered or kept from voting, by them, unless guilty of an offence, or of threatening to commit one. The object they must have had in view is accomplished when all courts are stopped from transacting any business on such days, of a civil nature, that requires the attendance of any party, attorney, witness, officer, or other person. There was no necessity or reason for prohibiting courts from doing acts on those days, that judges or justices of the peace could quietly perform without interfering in the least with their own right or that of any other elector to go to the polls and deposit his ballot.

The justice undoubtedly rendered the judgment in this case without thinking it was unlawful to do so on the day a general election was held; and had he been told it was illegal to do the act on that day, it is probable he would not have supposed it was wrong, on account of the sacredness of the day, but only because the legislature had interdicted it.

The foregoing reasons have convinced me that a justice of the peace may lawfully render a judgment on the day a general election is held, in a cause that has been tried and submitted to him on a previous day. I do not deny that such an act is within the letter of the statute forbidding courts from transacting any business of a civil nature on such a day; but I think it is not within the spirit or meaning of such statute, and therefore not prohibited by it.

I have not been unmindful of the rule that requires courts

to ascertain the meaning of a statute by reading it according to the natural and most obvious import of its language. (*See Waller* agt. *Harris*, 20 *Wend.*, 561, 562; 7 *Hill*, 408; 1 *Kern.*, 601, 602; 3 *id.*, 360.) But while I have kept this rule in mind, I have supposed and still suppose it consistent with another, which declares that " such construction ought to be put upon a statute as may best answer the intention which the makers had in view. And this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances; and whenever such intention can be discovered, it ought to be followed with reason and discretion, in the construction of the statute, although such construction seems contrary to the letter of the statute." (*The People* agt. *Utica Ins. Co.*, 15 *John.*, 380.) " A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers." (*Id.*) " In construing a statute the intention of the legislature is a fit and proper subject of inquiry." (*Id.*)

In *Jackson* agt. *Collins*, (3 *Cow.*, 89,) which was ejectment for a lot of land in Rochester, one Lee, a deputy sheriff, sold the lot by virtue of an execution issued upon a judgment owned by one Schofield, who was also a deputy of the same sheriff. One Wadhams bid off the land for the use of Schofield; the former assigned the certificate of sale to the latter, who receipted the amount of the bid upon the execution. The sheriff, by Lee as deputy, gave Schofield a deed of the lot, and the plaintiff claimed title thereto through him. SAVAGE, Ch. J., in delivering the opinion of the court, said : " It is made a point that Wadhams was a mere trustee for Schofield, and that he, being a deputy of the sheriff at the time of the sale, was prohibited by statute from purchasing. The statue is, ' that it shall not be lawful for any sheriff or other officer to whom any such

execution shall be directed. *or any of their deputies*, or any *person for them or either of them*, to purchase any goods or chattels, lands or tenements, at any sale, by virtue of any execution, and all purchases so made by them, or any of them, or *for the use of them, or any of them*, shall be void.' Admitting, as the plaintiff does, that Wadhams purchased for the use of Schofield, the purchase comes *within the letter of the act;* but it could never have been the intention of the legislature to have prevented a deputy sheriff, when plaintiff in an action, from bidding, in order to secure his money.    The object was to prevent abuse—that the sheriff or his deputies should not be allowed to become purchasers at their own sales, and thereby be induced to conduct corruptly in relation to them.    But surely it was never intended to place those persons in a worse situation than others, as to the collection of their own demands."    The chief justice then quoted the above mentioned rules from 15th *Johnson's Reports*, for the construction of statutes, and added, that he was of the opinion Schofield had the right to bid and purchase the lot, and that the plaintiff was entitled to recover.

I think these authorities sustain the views I have expressed in this case.

I shall not attempt to show that the rendition of the judgment by the justice was a mere ministerial act.    If the decision in *Matthews* agt. *Houghton*, (2 *Fairfield's R.*, 377,) holds that such an act is ministerial, I am not prepared to follow it; for I think it is judicial.    (*See* 3 *Denio*, 72.) Neither shall I infer that the justice determined and entered upon his minutes, prior to the day of election, for which party he should give judgment, and the amount of it including costs, because he has not expressly stated in his return he did not do so, and undertake to uphold the judgment on the ground that he did all that was judicial. in rendering it before the day of the election, and all that he did on

that day was to transfer it into his docket, which was ministerial. (*See Hall* agt. *Tuttle*, 6 *Hill*, 38.)

I shall hold that the rendition of the judgment on the day of a general election was not prohibited by the statute referred to, the cause having been previously tried and submitted.

I am gratified that I have come to the conclusion the judgment is not void, but valid; because it is apparently just.

It follows that the judgment of the county court reversing that of the justice is erroneous, and should be reversed, and that of the justice affirmed, with costs.

CAMPBELL, J., concurred. He also thought the judgment of the justice could be sustained on the ground that the day of a general election begins at sunrise and ends with the going down of the sun, (*see* 8 *Barb.*, 388 *and* 389,) and upon the presumption that the judgment was rendered after the setting of the sun. But he did not place his vote to sustain the judgment of the justice on such ground.

PARKER, J., dissented.