## CHARLES L. WILSON *v.* SAMUEL BRANNAN.

MORTGAGE OF PERSONAL PROPERTY.—The mortgagee of personal property may, after the conditions of the mortgage are broken, upon giving reasonable notice to the mortgagor of the time and place of sale, sell the property mortgaged at public auction, and if the sale be *bona fide,* an absolute title to the property passes to the purchaser.

MORTGAGEE OF PERSONAL PROPERTY HAS TWO REMEDIES.—The mortgagee of personal property has two remedies, either of which he may pursue at his election. He may resort to a Court of equity to foreclose the mortgagor's right to redeem, or to compel a redemption, or he may obtain the same object by a fair public sale of property after due notice to the mortgagor.

NOTICE OF SALE OF PERSONAL PROPERTY MORTGAGED.—What is a reasonable notice to the mortgagor of the time and place of sale at auction of personal property mortgaged, must be determined from all the circumstances of each particular case, and he who alleges that a notice is not sufficient must assign some reason for his allegation.

SALE OF PERSONAL PROPERTY PLEDGED.—Personal property pledged to secure a debt may be sold by the pledgee, after the debt to secure which it was pledged has become due, if the sale be made at public auction and after reasonable notice of the time and place of sale be given to the pledgee.

RIGHTS OF MORTGAGOR IN PERSONAL PROPERTY MORTGAGED.—The mortgagor of personal property has an equity of redemption in the mortgaged property after the conditions of the mortgage are broken, which he may assert by paying the debt and redeeming the property at any time before this equity of redemption has been cut off by a foreclosure or by a sale at auction.

RIGHT OF MORTGAGOR TO REDEEM PERSONAL PROPERTY.—If the mortgagee of personal property refuses, after condition broken, to allow the mortgagor to redeem

the property mortgaged, the mortgagor may assert this right by a bill in equity, if he brings his suit within a reasonable time.

RIGHT OF ONE OF TWO MORTGAGEES OF PERSONAL PROPERTY.—If a mortgage on personal property is made to two persons, to secure the separate debt of each, either mortgagee, after condition broken, may advertise and sell at public auction the undivided interest which he holds in the property as security for his debt, and the purchaser will become a tenant in common with the owner of the unsold portion.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The plaintiff appealed from the order refusing the injunction.

The other facts are stated in the opinion of the Court.

*Cook,* and *Hittell,* for Appellant.

*Can the mortgagee of a chattel mortgage in California sell the mortgaged property without a judicial foreclosure ?*

It is well known that the old common law doctrine regarded a mortgage as an absolute sale of the property mortgaged, to be defeated upon the performance of the condition ; and this doctrine applied as well to mortgages of personal as of real estate. But the equitable interposition of the English chancery early changed the rule in regard to real property, and it soon became settled law that real mortgages were mere securities and that there could be no sales of mortgaged real estate by the mortgagee without foreclosure. In regard to chattels, on account probably of their being sold with delivery, and easily transferred from hand to hand, the old idea of absolute sale upon condition subsequent had a firmer hold ; and it will be seen that such sales, which are still possible as to personal though not as to real estate, still occur, and are more or less confounded in the books with what we now understand to be meant by the term " mortgage "—that is to say, a security in contradistinction to a sale on condition.

The mortgage of the present day, unless the nature of the transaction or the express terms of the contract show otherwise, is regarded as a mere security, and resembles what was known in the old common law and in the civil law, as a pledge.

While the notion of a mortgage being a sale upon condition remained, it was held that the property upon default became absolute in the mortgagee. But from the earliest times there was a recognized distinction between such mortgages in the way of conditional sales and mortgages in the way of securities, or pledges.

Glanville, the earliest of writers on the common law whose works have come down to us, says that a loan is sometimes made on the security of a pledge, (*sub vadii positione*) and the pledge may consist of chattels, lands, or rents. Sometimes possession is immediately given of the pledge on receipt of the loan, and sometimes it is not. Sometimes the thing is pledged for a term, and sometimes without. When a chattel is pledged, and possession is given, and for a certain term, the creditor is bound to keep the pledge safely, and not to use it to its detriment. If it be agreed that, in case the debtor should not redeem the pledge at the end of the term, the pledge shall remain with the creditor as his own property—the agreement must be observed. But if there be no such agreement, and there be a fixed time of redemption, and the debtor make *delay* in payment, the creditor may quicken the redemption by a writ (of which he gives the form) and which requires the debtor without delay to redeem (*acquietet rem quam invadiavit*) the pledge. On the return of the writ, if the defendant confessed the pledge, he was commanded to redeem in a reasonable time, and on default, the creditor had license to treat the pledge as his own. But if the pledge was made without mention of any particular term, the creditor might (*debitum petere*) demand his debt at any time, and the debt being discharged, the creditor was bound to restore the pledge without any deterioration.

And Mr. Chief Justice Kent, from whose opinion we cite the above extract, regards the doctrine laid down by Glanville, and followed by a number of early cases in England, which he also refers to, as correct. The property was to be considered as a mere deposit to be detained as security. (See *Cortelyou* v. *Lansing*, 2. Caines' Cases, 203.)

It is unnecessary to particularly cite the old cases upon this subject; but it may be stated generally that one series of them, commencing in *Capper* v. *Dickinson*, 1 Rolle, 315, followed the notion of a conditional sale, and the other series that of a pledge in the way of security. The case in Rolle went so far as to hold that if the property was not redeemed at the day, it was forfeited; and this decision, though as rigorous and as odious as the *lex commissoria* of Rome, which it resembled, was no more than the logical and legitimate result of the premiss upon which it was based, namely, an absolute sale upon condition subsequent. It never could properly or equitably be applied to cases of delivery of property in the way of security, or to a case, such as the one at bar, where the delivery was expressly as " collateral security " and in no respect as a sale.

The same reasons in favor of the equity of redemption, which apply to a mortgage of real estate, apply to a mortgage of personal property; and there is no good reason why the law should be different in respect to the two cases. We do not deny that there are cases, and some comparatively late ones, in which the old doctrine that a mortgagee after default may sell upon notice, is repeated; but we believe that in all those cases the term " mortgage " was misapplied, and that the contracts embraced something more than mere security, and either amounted to absolute sales with conditions of defeasance, or expressly contained powers of sale. (See *Hart* v. *Ten Eyck*, 2 John. Ch. 99; 2 Story Eq. Jur. §1,033; *Wheeler* v. *Newbould*, 16 N. Y. 392.)

We therefore feel safe in affirming, that by the general rules of law, unless a power of sale is expressly given or necessarily to be implied from the nature of the contract, there is no authority in a mortgagee to sell personal property without a judicial foreclosure.

In California, as we have intimated above, we do not know that the point has ever been raised; but all the decisions in regard to real estate mortgages and the nature of mortgages in general, as well as a fair construction of our statutes, lead

irresistibly in our opinion to the conclusion that whatever may be the law in England, and other States, in California there can be no nonjudicial sale of pledged or mortgaged personal property except under an express power. (*Goodenow* v. *Ewer*, 16 Cal. 461; *Smith* v. '49 *and* '56 *Quartz Mining Co.* 14 Cal. 242; *Johnson* v. *Sherman*, 15 Cal. 287; *Dutton* v. *Warschauer*, 21 Cal. 609; Practice Act, Sec. 246.)

*J. W. Winans*, for Respondent.

The common law doctrine that a mortgagee of chattels has the absolute title, subject only to be defeated by performance of the contingency, and may sell or otherwise dispose of them after forfeiture, is asserted in *Tucker* v. *Williams*, 1 Peere Williams, 261; *Lockwood* v. *Ewer*, 2 Atk. 303; *Westerdell* v. *Dale*, 7 Term, 306, 312; *Ryall* v. *Rowles*, 1 Vesey, 365, and elsewhere. It is thus clearly set forth in *Parker* v. *Banker*, 22 Pick. 46: "The law appears to be well settled, *both in England and in this country*, that the pledgee of personal property, after the debt becomes due, may sell without a judicial process and a decree of foreclosure, upon giving reasonable notice to the debtor to redeem. It was so decided in *Tucker* v. *Wilson*, 1 P. Wms. 261, and in *Lockwood* v. *Ewer*, 2 Atk. 303. The same rule of law was laid down in *De Lisle* v. *Priestman*, 1 Browne's Penn. Rep. 176, and in New York by Mr. Chancellor Kent, in *Hart* v. *Ten Eyck*, 2 Johns. Ch. 100, and again in his Commentaries, 2 Kent, 3 ed. 582. The principle thus settled seems to be founded in good sense, and may be essentially necessary to enable the pledgee to avail himself of his pledge in a reasonable manner, for the discharge of his demand." This doctrine of the Supreme Court of Massachusetts is also sanctioned in Alabama. "By the contract of mortgage," (says the Court in *Brown* v. *Lipscomb*, 9 Porter, 475,) "the title was vested in the mortgagee, subject to be divested by the payment of the money on or before the day stipulated. On the failure to pay, the title became absolute, and the mortgagee had nothing but an equity of redemption,

the possession having accompanied the mortgage." And, again, it has been so held in Missouri : " It is well settled that a mortgagee of personal chattels, after the day of redemption has passed, is regarded in law as the absolute owner." (*Robinson* v. *Campbell*, 8 Missouri, 366.) And in the same case, page 616, the Court thus decides : " Unquestionably, after forfeiture, the mortgagee has the legal title—is, in the eye of the law, the absolute owner of the chattels. It is difficult to conceive of a title of this character accompanied with such restrictions as to prevent its transfer to another. How can a man be said to be the absolute owner of a chattel, and yet unable to make any valid disposition of that chattel, by sale, gift, or otherwise ?" Such is also the view taken in New Jersey ; for says the Court, in *Hall* v. *Snowhill*, 2 Green's N. J. 18 : " The mortgage is a grant *in presenti*, subject to be defeated on payment of the money intended to be secured. The legal title to these chattels passed by the mortgage, and vested in the plaintiff." And the same principle prevails in North Carolina. (*Holmes* v. *Hall*, 3 Dev. N. C. 98.) In *Flanders* v. *Barstow*, 6 Shepley, Maine, 357, the Court sanctions the doctrine.

*Although the character and effect of real mortgages have changed under the influence of modern decisions, yet no such change has taken place in regard to personal mortgages, nor has the distinction between real and personal mortgages been removed or affected by modern rulings.*

The whole reasoning of appellant is based upon the proposition that there is no difference between real and personal mortgages, and that the decisions of this Court in reference to mortgages on real estate apply with equal force to mortgages on chattels. " Is it not evident," he says, " that the Legislature not only did, but intended to place personal property mortgages upon the same footing as real, and in both to take away the right claimed under the strict old notion of the common law to belong to the mortgagee, of selling without a judicial foreclosure ?" This view of appellant is neither sustained by reasoning, analogy, or the authorities. The distinc-

tion between real and personal mortgages is just as decided and just as arbitrary now as it was a century ago, and just as absolute in this State as elsewhere. Our Supreme Court has in no instance applied its decisions affecting real mortgages to those upon the personalty. Indeed, the very reasoning of those decisions shows them inapplicable to the case of chattels.

On the other hand, the case of *Wildman* v. *Radenaker*, already cited, and the case of *Smith* v. *'49 and '56 Quartz Mining Company*, 14 Cal. 242, sustain the distinction which we claim. But let us examine what the books say upon this point. "There is a wide difference," holds the Court in *Stewart* v. *Slater*, 6 Duer, 99, "between a mortgage of lands and a mortgage of chattels. In the first case, as the law in this State is now settled, the estate, subject to the mortgage, remains in the mortgagor, is bound by a judgment, and may be sold under an execution against him; the mortgage is regarded merely as a security for the debt, and not as a transfer of the title. But a mortgage of personal chattels *in all cases vests the legal title in the mortgagee*, and when by the terms, or by the legal construction of the instrument, he has an immediate right to the possession, although the possession may not in fact have been changed, he is, in judgment of law, *the absolute owner*, and it is merely as his bailee, and by his sufferance that the mortgagor retains the possession." Here we are furnished with a description, both full and clear, of the difference between a mortgage on real and one on personal estate. Again, the distinction between them is as important and absolute in regard to remedies as in regard to rights. Thus Mr. Chancellor Kent says, in *Hart* v. *Ten Eyck*, 2 Johns. Ch. 99, 100: "It seems now to be admitted (though Lord Chancellor Harcourt once held otherwise) that the creditor who holds the stock in mortgage is not bound to wait for a bill of foreclosure and decree of sale, *as in the case of a mortgage on land*, but may sell on reasonable previous notice to the creditor to redeem. * * * But if a freehold estate be held by way of mortgage for a debt, then it may be laid down as an invariable rule that the creditor must first obtain a decree for a sale under a bill of fore-

closure." The learned Chancellor proceeds to say, that for a party holding *land* in pledge, to sell the same at his own pleasure, "would open a door to the most shameful imposition and abuse;" which remark, appellant, by an easy but not very ingenious transition, has assumed the author to have applied to sales of personal instead of real property. The opinion of the Court, in *Butler* v. *Miller*, 1 Comstock, 500, is equally explicit. "*A mortgage upon real estate*," they declare, "is a mere security upon the land, and gives the mortgagee no title or estate therein whatever." Now this is precisely what this Court has determined in the cases quoted by appellant, and in other cases. Does it then follow that a personal mortgage is in the same category? Hear what the New York Supreme Court says in continuation: "Whereas a personal mortgage is more than a mere security, it is a *sale of the thing mortgaged*, and operates as a transfer of the whole legal title to the mortgagee, subject only to be defeated by the full performance of the condition." This question, then, is here fully passed upon by the Supreme Court of a State whose system of jurisprudence is analagous to our own, or rather identical, since we have preferred the appropriation of her system to the adoption for ourselves of any independent plan.

By the Court, CURREY, J.

This case has come to this Court on an appeal from an order refusing to grant an injunction. The respondent being about to sell at auction certain personal property, mortgaged or pledged to him by the appellant, the latter filed a complaint to prevent the sale, and obtained an order requiring respondent to show cause why an injunction should not issue as prayed for, and a further order temporarily restraining the sale. The respondent appeared and showed cause, and thereupon the injunction was refused and the temporary restraining order discharged.

The facts of the case are in substance as follows: On the 10th day of June, 1861, respondent loaned to appellant seventy-

five thousand dollars, and one William A. Dana loaned him fifteen thousand dollars; for the payment of these sums, one year from that date, with interest at the rate of two per cent per month, appellant gave his promissory notes, to wit: to the respondent a note for fifty-thousand dollars and a note for twenty-five thousand dollars, and to said Dana a note for fifteen thousand dollars. To secure the payment of these notes at their maturity, appellant executed and delivered to the respondent and Dana, a chattel mortgage of personal property consisting of four hundred tons of iron and one hundred bonds of the California Central Railroad Company of one thousand dollars each, with a quantity of cars and locomotives not then set up and put together, all of which property was at the time delivered to the mortgagees. The parties at the time contemplated that the appellant should thereafter have possession of the cars and locomotives, and it was agreed between them that they should be set up and put together when a new mortgage under and in accordance with the provisions of the Chattel Mortgage Act of 1857 (Laws 1857, p. 347,) should be executed, by which the mortgagor should mortgage to the same mortgagees the cars and locomotives so put together, and then the same should be delivered to the appellant. The cars and locomotives were accordingly set up and their construction completed in October, 1861, when the new mortgage was executed and the cars and locomotives were delivered to the appellant. This new mortgage was given not only to secure the sum of money specified in the first mortgage, but also the further sum of ten thousand dollars loaned to appellant by respondent on the 20th of June, 1861. The iron and bonds were held by respondent and Dana in possession under and subject to the mortgage first executed, and after the execution of the second mortgage the appellant held the possession of the cars and locomotives under and subject to its provisions.

The first mortgage contained therein apt words of bargain and sale of the property described and declared to be delivered by the mortgagor to the mortgagees, but it was also declared that such sale was intended as collateral security for

the payment of certain promissory notes described, given by the appellant to the respondent and to Dana respectively, which were payable, according to their tenor and effect, on the 10th of June, 1862, with interest at a specified rate ; and it was provided by the mortgage that if the notes should not be paid at maturity the mortgagees or their assigns should have power to foreclose as to the property sold and delivered, or to subject the same in any legal manner to the payment of the sums of money advanced to the mortgagees respectively, with interest according to the tenor and effect of the notes.

The first mortgage also provided that the mortgagor should give to the respondent and Dana additional security in case it should be ascertained that the property mortgaged was insufficient as security for the amount of his indebtedness to them, and by the complaint it appears that afterwards, in June, 1862, eighty-five second class bonds of the California Central Railroad Company, each of which was in the sum of one thousand dollars, were delivered to the respondent as an additional security in pursuance of the stipulation in the mortgage thereto relating, and it is alleged in the complaint that at the time the last mentioned bonds were delivered they were so delivered with the understanding and on the condition that the appellant should have a reasonable extension of time to allow him to make negotiations for raising money to discharge the mortgages and the debts thereby secured. The respondent, by his answer, denied that these bonds were delivered to him with the understanding and condition alleged, but, on the contrary, averred that they were delivered in pursuance of the stipulation so to do contained in the mortgage first executed.

The notes made and delivered to the respondent remaining unpaid, he gave notice to the appellant on the 15th of February, 1863, that unles the same were paid and the iron and the bonds mentioned in the first mortgage, and the eighty-five bonds given as additional security, were redeemed, he, the respondent, would cause the same, to the extent of the respondent's interest, together with the appellant's equity of redemption therein, to be sold at public auction on the 28th day of

the same month of February, at a particular hour of the day and at a place specified. This notice also stated that such sale would be made at the time and place designated after giving public notice· thereof for eight days in the *Alta California* newspaper. Such notice was first published in the newspaper named on the 20th of February, 1863, and this action was commenced on the 24th of the same month.

The question raised and to be determined is, whether the mortgagee or pledgee of goods and chattels delivered to him by the mortgagor or pledgor as security for the payment of a debt at a particular day can sell the property after the debt has become due, in the manner proposed by the respondent in this case.

The iron and bonds which are involved in this controversy were not a part of the property mentioned in the second mortgage, and as security, could only be subjected to sale under the first mortgage, in some mode sanctioned by the law of the land, other than the Chattel Mortgage Act of 1857. By the seventeenth section of the Act concerning fraudulent conveyances and contracts (Laws of 1850, p. 267), it is provided that " no mortgage of personal property hereafter made, shall be valid against any other persons than the parties thereto, unless possession of the property be delivered to and retained by the mortgagee." When this statute was passed, the common law had been adopted by legislative enactment. (Laws, 1850, p. 219.) And as between the parties to a mortgage of chattels, their rights were to be determined by the rules of the common law on the subject. (*Wildman* v. *Radenaker*, 20 Cal. 617.)

The first mortgage seems to have been executed and the property delivered to the mortgagees, with the view to conform to the requirements of the seventeenth section of the Act concerning fraudulent conveyances and contracts. By the common law a grant or conveyance of goods in gage or mortgage passes the legal title conditionally to the mortgagee, and if the goods are not redeemed at the time stipulated, the title becomes absolute at law, although equity will interfere to compel a redemption. (Story on Bailments, Sec. 287.)

The Supreme Court of New York, in *Langdon* v. *Buel*, 9 Wend. 83, held that a mortgagee of personal property, upon failure of the mortgagor to perform the condition of the mortgage, acquires an absolute title to the property. This, say the Court, is well established to be the legal effect and operation of a chattel mortgage. The same doctrine is laid down in *Brown* v. *Bement*, 8 John. 96; in *Ackley* v. *Finch*, 7 Cow. 292; in *Case* v. *Boughton*, 11 Wend. 109; in *Patchin* v. *Pierce*, 12 Wend. 61; in *Smith* v. *Acker*, 23 Wend. 667, 668; in *Burdick* v. *McVanner*, 2 Denio, 171; in *Fuller* v. *Acker*, 1 Hill, 475; and in *Butler* v. *Miller*, 1 Coms. 500. To these might be added many decisions to the same effect of the highest Courts of that State. The same doctrine in substance was held by the Supreme Court of Missouri in *Williams* v. *Roger*, 7 Mo. 556, and in *Robinson* v. *Campbell*, 8 Mo. 366, 615; by the Supreme Court of Alabama in *Brown* v. *Lipscomb*, 9 Porter, 475; by the Supreme Court of Maine, in *Flanders* v. *Barstow*, 18 Maine, 357, and by the Court of Errors and Appeals of Mississippi in *Thornhill* v. *Gilmer*, 4 Sm. & Marsh, 153. The Supreme Court of New Jersey held, in *Hall* v. *Snowhill*, 2 Green, 9, 18, that the mortgagee of personal property is considered the true owner, and has a right to the actual possession and control of it in the event of the non-payment of the debt due him from the mortgagor—that the mortgage is a grant *in presenti*, subject to be defeated on payment of the money intended to be secured.

The cases which hold that at law the title of the mortgagee to the chattels mortgaged becomes absolute upon the breach of the stipulation to pay at a particular day, recognize that the mortgagor has an equitable right or interest in the property of which he may avail himself by paying the debt due and thus redeeming the property; and as long as the right of redemption remains in the mortgagor, it may be said, viewing the subject from an equitable stand-point, that the title of the mortgagee is not to every intent absolute. In mortgages of personal property there exists, after condition broken as in mortgages of land, an equity of redemption, which may be

asserted by the mortgagor, if he brings his suit to redeem within a reasonable time.    (2 Story's Eq. Jur. Section 1,031; *Westbrook* v. *Kemp*, 1 Vesey, 278.)

The argument on the part of the appellant is to the effect that the mortgagee of personal property is limited to the remedy of judicial foreclosure for the purpose of subjecting the property to a sale for the satisfaction of the debt due.    The rule that prevails in relation to the foreclosure of mortgages on real property is invariable that the creditor must obtain a decree of a competent Court for a sale of the mortgaged premises, unless the mortgage deed provides otherwise for the sale of the lands mortgaged.    (*Hart* v. *Ten Eyck*, 2 John. Ch. 99, 100; *Fogarty* v. *Sawyer*, 17 Cal. 593.)    But Judge Story says (2 Story's Eq. Jur. Section 1,031): "There is a difference between mortgages of land and mortgages of personal property, in regard to the rights of the mortgagee, after a breach of the condition.    In the latter case there is no necessity to bring a bill of foreclosure; but the mortgagee, upon due notice, may sell the personal property mortgaged, as he could under the civil law, and the title, if the sale be *bona fide* made, will vest absolutely in the vendee.    And it makes no difference whether the personal property mortgaged consists of goods or of stock, or of personal annuities," and he cites cases and elementary authorities in support of the doctrine thus declared. (See, also, 2 Story's Eq. Jur. Secs. 1,008, 1,009; Story on Bailments, Sec. 309, and the authorities cited; *Patchin* v. *Pierce*, 12 Wend. 61.)

The mortgagee has two remedies, either of which he may pursue at his election.    He may resort to a Court of equity to compel a redemption or to foreclose the mortgagor's right to redeem, or he may obtain the same object by a fair public sale of the property after due notice to the mortgagor. (*Charter* v. *Stevens*, 3 Denio, 35.)    The mortgagor's right of redemption remains until foreclosure by judicial sentence in the one case, or sale after due notice in the other; and this right may be enforced in equity.    (Powell on Mortgages, Sec. 1,041, and cases before cited.)

Personal property pledged may in like manner be sold after the debt which it was delivered to secure has become due, if such sale be made at public auction and upon reasonable notice thereof to the pledgor (*Mauge* v. *Heringhi*, 26 Cal. 577;) or, if the pledgee prefers, he may file a bill in a Court of equity against the pledgor for a foreclosure and sale. (Story on Bailments, Sec. 310; Edwards on Bailments, 249, 250.)

Whether the iron and bonds delivered be regarded as a pledge or mortgage can make no practical difference, as in either case the mode of subjecting the security to sale for the payment of the debt may be the same, and hence we have made no reference to the distinction to be found in the books between a pledge and mortgage, and we deem it unnecessary in disposing of the case before us to do so. (See on the subject, *Wilson* v. *Little*, 2 Coms. 445; *Dewey* v. *Bowman*, 8 Cal. 148.)

It is insisted on the part of the appellant that the two hundred and forty-sixth section of the Practice Act is virtually a denial of any right in the mortgagee to any other remedy for the recovery of a debt or the enforcement of a right secured by a mortgage or other lien on personal property than by an action. The statute generally denominated the Practice Act, is an Act to regulate proceedings in civil cases in the Courts of justice in this State, and the language of the two hundred and forty-sixth section providing that there shall be but one action for the recovery of any debt or the enforcement of any right secured by mortgage or lien upon real or personal property must be understood as relating to civil actions commenced and prosecuted in the Courts of justice of the State, and not to embrace and control proceedings sanctioned by the common law, which in no just legal sense can be called actions at law or suits in equity.

Notwithstanding the general doctrine that real property mortgaged can only be subjected to sale for the payment of the debt thereby secured, by judicial decree, in the absence of any express power granted by the mortgagor to sell and convey the premises for the payment of the debt, the Court in

*Fogarty* against *Sawyer*, 17 Cal. 593, held that a sale of mortgaged real estate might be made in accordance with the conditions of the power, and that a sale so made would pass to the purchaser a good title upon its consummation by a conveyance. If a sale of real property could be made under a power granted in the mortgage, we see no reason why a sale of personal property, mortgaged or pledged, could not be made for the debt secured by it and due, under the authority conferred on the mortgagee by the law of the land.

It is maintained by the appellant that as the two mortgages had relation to one and the same transaction, and as the second mortgage could not, under the provisions of the Act of 1857, be enforced otherwise than by judicial foreclosure, that therefore the mortgagee could not proceed under the first mortgage to an enforcement of payment of the debt in any other mode than by an action in a Court of equity to obtain a foreclosure and a decree for the sale of the mortgaged property. Though the object of the second mortgage was to secure the debt for which the first was given, it does not follow that the first mortgage, as to the iron and bonds, was in any degree affected by the second. In fact it is manifest that the second mortgage was intended, as originally contemplated, as a substitute for the first only so far as the cars and locomotives were concerned.

If it had not been the purpose of the parties that the appellant should have the possession of the cars and locomotives, there would have been no necessity for the second mortgage, and it is fair to presume it would not have been executed except to preserve the security on the portion of the property delivered to the appellant. It is by the first mortgage alone that the mortgagees have any lien on the iron and bonds, and their rights in respect thereto are the same as they would have been if the second mortgage had not been executed.

The respondent and Dana were joint mortgagees, holding the property mortgaged and in their possession as security for the debts due them respectively in the proportions that their respective demands bore to each other, and it is suggested on

behalf of appellant that the respondent could not proceed to sell the property to the extent of his interest in it without the co-operation of Dana. The respondent did not propose to sell any greater proportion of the property than the undivided interest which he held as security for his own debt. That he might do so is decided in *Tyler* v. *Taylor*, 8 Barb. 387. The purchaser at such sale of the undivided interest would become the owner of such interest or share as a tenant in common with the owner of the remaining and unsold portion of the property, and hold it discharged of the appellant's former equity of redemption.

The objection that the notice to the appellant calling on him to redeem, and of the sale, was not a reasonable notice, we think is not well founded. The appellant was aware that the debt had at that time been due for more than eight months, and it does not appear that he had any valid reason for delaying payment, nor does it appear that the period of thirteen days within which he was at liberty to redeem after notice given, was not sufficient if he could redeem at all. In *Willoughby* v. *Comstock*, 3 Hill, 389, the Court held that a notice of two days of the time and place of sale was sufficient, and it is not pretended in this case that a notice for thirty or sixty days, or even for any longer period, would have been of any advantage to the appellant. In the absence of any positive rule of law or established custom on the subject, the reasonableness of the notice as to time must be determined from all the circumstances of the particular case; and he who alleges that a notice in this respect is not sufficient, should assign some reason for his allegation.

From an attentive examination of all the questions presented and argued by the learned counsel for the respective parties, we are of the opinion the Court below properly decided the case and that the order should be affirmed.

Order affirmed.

Mr. Justice SHAFTER expressed no opinion.