STATE OF MISSOURI, Respondent, *v.* HENRY C. GREEN, Appellant.

1. *Crimes—Murder.*—If the killing be done of preconceived anger and malice, although in mutual combat, it will be deliberate and premeditated murder.
2. *Criminal Practice—Sunday.*—From 12 o'clock on Saturday night until 12 o'clock on Sunday night, no court can transact any business except to receive a verdict or discharge a jury. (R. C. 1855, p. 542, § 64.) The civil day Sunday is *dies non juridicus.*

*Appeal from the St. Louis Criminal Court.*

*Mortell,* for appellant.

The court erred in refusing to allow defendant to prove that Josephine Cissna, the witness, was an inmate of a bawdy-house for the last seven years, and that she was then the inmate of a bawdy-house.

This inquiry bore directly upon the present character and moral principles of the witness, and was therefore essential to the due estimation of her testimony by the jury. Learned judges have been disposed to allow it. (R. C. § 2, p. 1577; 13 Mo. 236–442; 14 Mass. 387; 2 Stark. Ev. 369, with note; 1 Greenl. § 459; State v. Mattier, 4 Wend. 257–8; Phil. & Ames on Ev. 925; 4 Esp. 104, 1 Phil. & Ames, 293; 2 Dev. Law R. 209–10; 1 Stark. 182; 10 Ves. 50; Anon. 1 Hill, S. C. 251, 258; Eaken v. Brown, 1 E. D. Smith, 37; 2 Wieb, N. Y. Pr. 607.)

The last and most important question to be determined by this court is, whether a trial commenced on Wednesday, and progressing from day to day, shall be concluded on Sunday.

The 64th sec., R. C. 1855, p. 542, declares, that "no court shall be open or transact business on Sunday, unless it be for the purpose of receiving a verdict or discharging a jury, and every adjournment of a court on Saturday shall always be to some other day than Sunday, except such adjournment as shall be made after a cause has been committed to the jury."

If the court could sit and hear causes five minutes after

the time prohibited, why not an hour or more? Where will be the limit? Can it find an apology in plea of expediency? Then why may they not sit the whole day? The law sets a limit to judicial as well as human action, beyond which they cannot step, nor incur its displeasure. No judge of ordinary learning could sit or hear civil or criminal cases on Sunday, even by consent of parties, in violation of the positive injunction of the statute. The omission to order the judge to stop reading or charging a jury, on a day prohibited, gives the proceedings no validity. The proceedings are void; anything done contrary to statute is void. (1 Bish. Cr. L. §§ 150–3; Smith's Stat. & Const. L. § 677.) The man whose life is sought ought to be tried by the law of the land. (27 Mo. 589.)

HOLMES, Judge, delivered the opinion of the court.

This is an appeal from the St. Louis Criminal Court, in which the defendant was indicted, tried and convicted of murder in the first degree. There was evidence in the case tending strongly to show that the immediate occasion on which the homicide took place was not altogether sudden, but was the result of preconceived anger and malice. In such case, if the killing be done in malice, though in mutual combat, it will be deliberate and premeditated murder. (1 Russ. Cr. 527.) There was also some evidence that the deceased, during high words between the parties, slid his hand down into his side pocket and drew out a knife, which he had carried concealed in his sleeve, before the defendant drew his pistol and fired. The court instructed the jury very fully upon both these aspects of the case.

We have carefully reviewed the instructions with reference to the whole evidence. In those relating to the crime of murder in the first degree, as charged in the indictment, we find nothing which can admit of serious doubt or question; and those which were given upon justifiable homicide, or self-defence, laid down the law upon the case made by the evidence as favorably for the defendant as the well-settled

doctrines of the law would allow. (Wharton on Hom. 214, 230.) We see no occasion to go into any discussion of the subject further here. The questions of fact were fairly submitted to the determination of the jury. The instructions refused for the defendant were substantially contained in those already given by the court.

Some exceptions were taken to the exclusion of testimony bearing on the moral character of one of the witnesses for the State, by way of impeaching her credibility ; but even on this the rulings of the court went to the furthest extreme of any authority in favor of the defendant. (1 Greenl. Ev. § 461 and notes.) Moreover, ample evidence was in fact admitted, upon proper questions, to establish all that the defendant proposed to prove by the excluded testimony, namely, that the general moral character of the witness was bad, and that she was not to be believed under oath. When this fact is already shown in proof, even the exclusion of a record of conviction of keeping a bawdy-house has been held not to be error. (Deer v. State, 14 Mo. 348.)

Exception was taken to the refusal of the court to grant a new trial, first, on the ground of newly discovered evidence, supported by the affidavit of the witness, stating what he could testify. This evidence could hardly be considered as sufficiently material and important to warrant us in interfering with the decision of the court below, on that ground alone. The second ground was, that the reading of the instructions to the jury by the court had not been concluded, nor the cause finally submitted to the jury, until the clock in the court room showed ten minutes after twelve, midnight, on Saturday, when the court took a recess, without adjournment, until two o'clock on Sunday morning, and then received the verdict and discharged the jury. These facts are distinctly stated in the bill of exceptions, signed by the judge, and they are verified by the affidavits of several persons, which are filed with the motion. The statute expressly declares, that "no court shall be open, or transact business on Sunday, unless it be for the purpose of receiving a

verdict or discharging a jury," and that " every adjourn-
ment of a court on Saturday shall always be to some other
day than Sunday, except such adjournment as may be made
after a cause has been committed to a jury." (R. C. 1855,
p. 542, § 64.) Here is a positive statute prohibition of the
sitting of the court on Sunday for any other purpose than
that of receiving a verdict and discharging a jury. If the
cause has been committed to the jury on Saturday, the court
may adjourn to Sunday for that purpose only. When does
Saturday end and Sunday begin ? At common law the nat-
ural and civil day consists of twenty-four hours, from mid-
night to midnight, and the artificial or solar day extends
from sunrise to sunset. (Co. Litt. 135, o.) The Sabbath or
Lord's day, as one of the *dies fasti*, having its origin in the
Christian Church, has sometimes been held to mean, both at
common law and under the statutes of some of the States,
the artificial or solar day, extending from morning light to
the setting sun. (Co. Litt. 135 ; Keilw. 75 ; Fox v. Abel, 2
Conn. 541 ; Hiller v. English, 4 Strobh. 486.) In Hiller v.
English the whole subject is examined at length and with
much learning. In some States the express language of the
statutes has defined the limits of the day intended. In Con-
necticut, a statute naming " the Lord's day" only, was held
by a majority of the judges to refer to the artificial or solar
day, between morning light and sunset (2 Conn. 541) ; but
in New Hampshire, a statute prohibition " on the first day of
the week, commonly called the Lord's day, or any part
thereof," was held to extend from midnight on Saturday
until midnight on Sunday. (Shaw v. Dodge, 5 N. H. 462.)
In our statute there is no language of definition but the
simple word *Sunday*. Sunday is the name of the civil day,
and it does not necessarily refer to the Christian festival or
Lord's day. The Constitution of this State provides, that
" the Governor shall sign a bill within ten days after it is
presented to him, Sundays excepted." (Art. 5, sec. 9.)
Here it is plain that Sunday is one whole civil day, like the
other six ; and a similar clause in the old Constitution was

said to be a recognition of Sunday as a day of rest. (State v. Combs, 20 Mo. 217.) As such, it is placed on merely civil grounds. The common law maxim, *Dies Dominicus non est dies juridicus*, as a day consecrated to divine service, according to Coke, is nevertheless based on reasons looking to the civil government as well as to divine service or public worship, as good for rest and relaxation, and as serviceable to the State as a civil institution. (Broom. Max. 10; 4 Black. Com. 63.) The statute prohibitions of certain kinds of work and labor, games, selling goods, keeping groceries, tippling-shops, and the like, as misdemeanors, define the day as "the first day of the week, commonly called Sunday." (R. C. 1855, p. 631, §§ 33–6.) As including one-seventh part of the whole week, this can scarcely be supposed to mean less than the whole civil day, from midnight to midnight. Nor do we see any good grounds on which Sunday, as named in the act in question here, can be interpreted to mean anything else than the same civil day. Lord Coke informs us that the natural day of twenty-four hours, comprising the solar day and the following night, and extending from sunrise to sunrise, was recognized by the laws of England in certain cases; the artificial or solar day, from sunrise to sunset, in certain other cases; and in many cases, the Egyptian and Roman civil day of twenty-four hours, from midnight to midnight. (Co. Litt. 135.) This last must be taken to be the civil day of our law, where no other limitation is expressly or impliedly defined. At common law, *dies juridici* were within the four terms only; and the Sabbath, or Lord's day, though it were in term, was *dies non juridicus*, and a day on which no judicial act could be done. Before the Stat. 29, Car. II., and so before the fourth year of James I., all ministerial acts on Sunday were lawful, though judicial acts were not. Yet the Court of Chancery was always open, and the Court of Exchequer, as well as Parliament, could sit on Sunday, and any other court might adjourn on a day *non juridicus*, but an award of process, or the entry of a judgment was void. (6 Com. Dig. 331–3, *Temps*, B. 3, C. 1, 5; Broome's Max. 19;

Swan vs. Broome, 3 Burr. 1595; Story v. Elliott, 8 Cow, 27; Butler v. Kelsey, 15 J. R. 177; Pulling v. People, 8 Barb. 384.) Our statute declares that no court shall be open or transact any business on Sunday, unless it be an adjournment to Sunday for the purpose of receiving a verdict and discharging a jury. It supposes that in such case the cause has been committed to the jury on Saturday before 12 o'clock, midnight; or if it has not, then the adjournment must be to some other day than Sunday. However it may have been at common law, there can be no doubt that, under this statute, the sitting of the court, the giving of instructions and the submitting of the cause to the jury, were prohibited, whether they were strictly judicial or merely ministerial acts. In Pulling v. People, (8 Barb. 384,) a case of petit larceny was submitted to the jury at 2 o'clock on the morning of Sunday, the verdict was received at 3 o'clock, and the conviction was held to be erroneous, under the statute of New York, of which ours is an exact copy. The same conclusion has been arrived at in other States, on similar states of facts, in a variety of cases, and mainly on common law principles, where no such statute existed, (Arthur v. Mosby, 2 Bibb, 589; Chapman v. State, 5 Blackf. 111; Nabors v. State, 6 Ala. 200; Baxter v. People, 8 Ills. 384; 1 Jones, N. C. 122.) In some other States a similar proceeding on Sunday has been sustained, in the absence of any express statute prohibition, on the plea of necessity or common usage, and as not interfering with the religious festival of Lord's day, which was considered as limited to the artificial solar day. (Van Risser v. Van Risser, 1 South. N. J. 156; Huidekesser v. Cotton, 3 Watts, 56; Johnson v. Day, 17 Pick. 106; Hiller v. English, 4 Strobh. 486.) Cases may be imagined in which it might be difficult to determine the exact hour of midnight if the matter were to be considered with metaphysical nicety, or it might be doubtful by what clock the court was to be governed, or how far it might come within the province of the court to determine the hour. It is better that all such questions should be clearly avoided.

Here the fact appears by the record, that the court did sit and perform judicial functions after midnight. We have felt some hesitation about reversing a conviction otherwise legal, on so small a matter as ten minutes' time. The maxim *de minimis non curat lex* cannot be applied to such a case. The rule must be defined ; the line must be drawn somewhere. The day must be held to begin either at midnight, or at sunrise ; and both principle and authority concur in fixing it at midnight. If the hour can be exceeded by ten minutes, it may by an hour, or twelve hours. Such irregularities and void proceedings have been held to make the final judgment erroneous, and in many similar cases new trials have been granted.

The judgment will be reversed, and the cause remanded for a new trial. The other judges concur.